**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| MARCUS BAKER, EVA ADAMS, JILLIAN ABBINANTI, ANN BRESNEN, and CAROLE BUCHANAN, individually and on behalf of all others similarly situated, | Civil Action No.: 3:23-CV-02761-N |
| Plaintiffs, | Hon. David C. Godbey |
| - vs - | |
| MATCH GROUP, INC. (individually, d/b/a, and as successor to Match Group, LLC (f/k/a and d/b/a Match.com), s/i/i Tinder, Inc. (d/b/a Tinder), s/i/i Humor Rainbow, Inc., and d/b/a Match.com, OkCupid, Tinder, Hinge, PlentyOfFish, OurTime; BLK, and Chispa), MATCH GROUP, LLC (individually, d/b/a, and as successor to Tinder, Inc., Humor Rainbow, Inc., and Hinge, Inc., and d/b/a Match.com, OkCupid, Tinder, Hinge, PlentyOfFish, and OurTime), HINGE, INC. (individually, and d/b/a Hinge); HUMOR RAINBOW, INC. (individually, and d/b/a OkCupid), PEOPLE MEDIA, INC. (individually, and d/b/a OurTime and s/i/i to SeniorPeopleMeet.com), and AFFINITY APPS LLC (individually, a/k/a Affinity Apps, LTD, and d/b/a BLK and Chispa), | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

    A.    The Genesis of the Action and Its Procedural History ........................................... 2

    B.    The Current Action ................................................................................................. 4

LEGAL STANDARD.......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.    PLAINTIFFS' CLAIMS ARE NOT COGNIZABLE UNDER APPLICABLE LAW ...... 5

    A.    Plaintiffs admit they are bound by TOUs bearing Texas law clauses. ................... 6

    B.    Since the choice of law provisions waive conflicts, the Court should find that Texas law applies here without performing a Restatement analysis. .................... 6

    C.    The parties' choice of law is also enforceable under the Restatement analysis. .... 8

        1.    Weighted assessment of contacts with each state in light of basic conflict of laws principles shows Texas has a more significant relationship to the parties and claims........................................................... 9

            a.    The quality-weighted assessment of contacts favors applying Texas law. ..................................................................................... 9

            b.    Analyzing the weighted factors in light of Section 6 principles confirms Texas law applies......................................................... 10

                (i)    Protection of justified expectations requires enforcing the parties' agreement. ....................................................... 11

                (ii)    Certainty, predictability, and uniformity of result require enforcing the parties' agreement. ......................... 11

                (iii)    The needs of the interstate and international systems are met by holding contracting parties to their bargains... 12

                (iv)    Texas law is easy for the Court to apply.......................... 12

                (v)    Texas public policy as expressed by the Texas legislature supports applying Texas law. ......................... 13

                (vi)    Applying Texas law does not violate public policy of Illinois. ....................................................................... 14

                (vii)    § 6 factors confirm Texas has a more significant relationship......................................................................... 15

        2.    Illinois does not have a materially greater interest than Texas............... 16

        3.    Application of Texas law would not contravene fundamental Illinois policy.................................................................................................... 16

II.    THE AMENDED COMPLAINT DOES NOT PLAUSIBLY SHOW DEFENDANTS VIOLATED BIPA ........................................................................................................ 17

A.   Plaintiffs' broad allegations, although stated as fact, are mere fantasy. ............... 18

B.   Defendants' ownership of patents is not evidence they use biometric information. ........................................................................................... 19

C.   It would be apparent if Defendants were using the Yahoo! "Face Search" invention. ........................................................................................ 21

D.   The "Matching Process" patents don't claim any biometric invention. ............... 21

E.   None of Plaintiffs' remaining allegations rise above mere speculation. ............. 22

CONCLUSION ................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*7310 Waterbury Land Trust v. CitiMortgage, Inc.*,
   No. 3:14-CV-4362 (N.D. Tex. May 15, 2015) ..........................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................................2, 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................................2, 5

*Blue Racer Midstream, LLC v. Kelchner, Inc.*,
   No. 3:16-CV-3296, 2018 WL 993781 (N.D. Tex. Feb. 21, 2018) .....................................9, 16

*Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*,
   770 F.3d 322 (5th Cir. 2014) ......................................................................................................20

*Clark v. Microsoft Corp.*,
   No. 23 C 695, 2023 WL 5348760 (N.D. Ill. Aug. 21, 2023).....................................................21

*Curtis v. FCA US, LLC*,
   No. 16-cv-50285, 2019 WL 1589746 (N.D. Ill. Apr. 12, 2019)................................................15

*Demond v. Infiniti HR, LLC*,
   No. 3:17-CV-1322, 2018 WL 4145053 (N.D. Tex. Aug. 30, 2018) ........................................13

*Doe v. Match*,
   No. 11 L 3249, 2012 Ill. Cir. LEXIS 3350, (Ill. Cir. Ct., Oct. 25, 2012). ...............................17

*Emblaze Ltd. v. Apple Inc.*,
   No. 5:11-cv-1079, 2015 WL 396010 (N.D. Cal. Jan. 29, 2015), aff'd, 639 Fed.
   Appx. 639 (Fed. Cir. 2016).........................................................................................................19

*FTC v. Match Group, Inc.*,
   No. 1:22-mc-54, 2023 WL 3181351 (D.D.C. May 1, 2023) ......................................................23

*Goosehead Ins. Agency, LLC v. Williams Ins. and Consulting, Inc.*,
   533 F. Supp. 3d 367 (N.D. Tex. 2020) ............................................................................ *passim*

*Grosser v. Red Mango FC, LLC*,
   No. 3:12-CV-2691, 2013 WL 12134086 .................................................................................9, 16

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*,
   892 F.3d 719 (5th Cir. 2018) ......................................................................................................18

*Jones v. Microsoft Corp.*,
    648 F. Supp. 3d 679 (N.D. Ill. 2023) ...................................................................20

*King Instruments Corp. v. Perego*,
    65 F.3d 941 (Fed. Cir. 1995)...............................................................................19

*M. Block & Sons, Inc. v. Int'l Bus. Machs. Corp.*,
    No. 04 C 340, 2004 WL 1557631 (N.D. Ill. July 8, 2004) ......................................14

*Mastrobuono v. Shearson Lehman Hutton Inc.*,
    514 U.S. 52 (1995)..............................................................................................8

*McGoveran v. Amazon Web Servs., Inc.*,
    No. 20-cv-1399, 2021 WL 4502089 (D. Del. Sept. 30, 2021)................................16

*Mell v. Goodbody & Co.*,
    295 N.E.2d 97 (Ill. App. Ct. 1973) .......................................................................14

*Ministers & Missionaries Benefit Bd. v. Snow*,
    45 N.E.3d 917 (N.Y. 2015)..............................................................................8, 11

*Mission Techs. Inc. v. STMicroelectronics Inc.*,
    No. 3:23-CV-0445, 2024 WL 150504 (N.D. Tex. Jan. 11, 2024) ............7, 8, 13, 17

*Nabors Drilling Techs. USA Inc. v. Deepwell Energy Servs. LLC*,
    568 F. Supp. 3d 756 (S.D. Tex. 2021) ............................................................ *passim*

*Nu-You Techs., LLC v. Beauty Town Int'l Inc.*,
    No. 3:15-CV-03433, 2016 WL 4717991 (N.D. Tex. July 7, 2016)....................5, 20

*Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*,
    ___ N.E.3d ___, 2024 WL 674251 (N.Y. Feb. 20, 2024).........................................7

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55 (1998)............................................................................................20

*Potomac Leasing Co. v. Chuck's Pub, Inc.*,
    509 N.E.2d 751 (Ill. App. Ct. 1987) ................................................................14, 15

*R2 Invs. LDC v. Phillips*,
    401 F.3d 638 (5th Cir. 2005) .................................................................................5

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) .................................................................16

*Sonat Expl. Co. v. Cudd Pressure Control, Inc.*,
    271 S.W.3d 228 (Tex. 2008)...............................................................................11

*Stein v. Clarifai, Inc.*,
    526 F. Supp. 3d 339 (N.D. Ill. 2021) ...................................................................23

*Telular Corp. v. Mentor Graphics Corp.*,
    282 F. Supp. 2d 869 (N. D. Ill. 2003) ...................................................................14

*Thakkar v. ProctorU Inc.*,
    571 F. Supp. 3d 927 (C.D. Ill. 2021) ...................................................................12

*Thakkar v. ProctorU, Inc.*,
    642 F. Supp. 3d 1304 (N.D. Ala. 2022).......................................................8, 15, 17

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) ...................................................................18

*WTM, Inc. v. Henneck*,
    125 F. Supp. 2d 864 (N.D. Ill. 2000) ...................................................................14

**Statutes**

Tex. Bus. & Com. Code Ann. § 503.001 ...................................................................13

**Other Authorities**

Restatement (Second) of Conflicts of Laws ........................................................ *passim*

Plaintiffs agreed Texas law would govern their relationship with Defendants, so their Illinois statutory claims are not cognizable. Plaintiffs' claims are also substantively deficient because they do not plausibly allege any Defendant actually processed any Plaintiff's biometric information without consent. For either of these reasons, this Court should dismiss the Amended Class Action Complaint (Dkt. 60, "Amended Complaint") with prejudice.

## <u>INTRODUCTION</u>

This putative class action is Plaintiffs' latest maneuver in their years' long effort to extract money from Defendants by exploiting a controversial Illinois law, the Biometric Information Privacy Act ("BIPA") with gish-galloping claims. This saga began when Plaintiffs' counsel threatened mass-arbitration and millions in JAMS filing fees if Defendants did not cave to their extortionate demands. After Defendants disarmed that threat, Plaintiffs sued in Illinois state court, an improper venue. Defendants removed, and the federal judge transferred the lawsuit here pursuant to the parties' Texas forum-selection clause. Despite their recent amendment, Plaintiffs fail to state a claim—and this Court should dismiss with prejudice—for two independent reasons.

*First*, Illinois' BIPA statute—the sole basis for both of Plaintiffs' claims—does not apply here. As Judge Shah in the Northern District of Illinois found, the parties agreed to venue in Dallas, Texas pursuant to the agreements between them. Texas public policy strongly favors enforcement of contracts as written, including choice of law and waiver of potential remedies. And importantly, because the parties waived consideration of Texas' conflicts of law rules, this Court should defer to their chosen law and need not analyze the issue under the Restatement (Second) of Conflicts of Laws (the "Restatement").

But even if this Court ignored the agreements, all relevant Restatement factors overwhelmingly favor applying Texas law: Plaintiffs allege the purported misconduct occurred in

Texas where Defendants are headquartered; Defendants require certainty in application of a single state's law given users' transient nature; and the Terms of Use ("TOUs") specify Texas law. Thus, the result is the same whether this Court enforces the parties' agreement or analyzes the claims under the Restatement: Texas law applies, and this Court should dismiss Plaintiffs' Illinois claims.

*Second*, even if Illinois law applied, all of Plaintiffs' BIPA allegations are conclusory and speculative. Plaintiffs' theory of liability depends on the abstract notion, pleaded repeatedly on "information and belief," that because Defendants own patents or use third-party services that could theoretically be used to collect biometrics, they actually do collect biometrics. Obviously, an important connector is missing. This is akin to concluding a person is a getaway driver because he owns a fast car. Plaintiffs have failed to allege any plausible facts as to how, and under what circumstances, which specific entity (Plaintiffs lump them all together) *actually collected and used* Plaintiffs' biometrics without permission. This is particularly egregious as the allegations show that Defendants **actually collect** biometrics **with proper consent**. Because Plaintiffs' speculative "belief" is not supported by anything but conclusory allegations, the Amended Complaint fails to meet the *Twombly* and *Iqbal* standards and it should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Genesis of the Action and Its Procedural History

In 2021, Plaintiffs' counsel, Labaton Keller Sucharow LLP ("Labaton"), threatened to file thousands of mass arbitration demands against Defendants, seeking to leverage the millions of dollars Defendants would have to pay in initial JAMS' filing fees ($1,500 for each claimant) into a settlement regardless of the claims' lack of merit. The premise was the same then as now— monetize the threat of leveraging claims under BIPA. Lacking actual facts, Plaintiffs implausibly speculate in the abstract that because patents and other technology were *available* to Defendants, they must be using them in violation of BIPA. Defendants have repeatedly explained to Labaton

that they only use biometrics in limited circumstances, and it is apparent where they use biometrics because Defendants comply with BIPA's consent and disclosure requirements. Yet, Labaton proceeded to file its first tranche of 75 meritless individual arbitrations in JAMS (including Plaintiff Baker) and promised to file thousands more if Defendants did not settle to avoid defense costs. In JAMS, Defendants invoked their rights under the parties' agreements to send the matters to small claims court. After substantial briefing, JAMS determined that Defendants' election was proper, administratively closed the arbitrations, and ordered Labaton to refile the individual claims in small claims court to enable the small claims court to determine whether it had jurisdiction.[1]

Instead, contrary to the TOUs' mandatory forum selection clause, Plaintiff Baker filed a putative class action in Cook County, Illinois. Defendants removed to the Northern District of Illinois and moved to dismiss on the grounds that pursuant to the TOUs, Baker's case should have been filed in small claims court, or in the alternative, should be transferred to this District. The District Court rejected Baker's argument that Defendants waived the arbitration agreement in the TOUs—including the class action waiver provision—but denied the motion to dismiss in favor of small claims court, finding the small claims court lacked jurisdiction. Dkt. 27, 36. Instead, Judge Shah transferred the case here. Dkt. 37. In his decision, Judge Shah noted the choice of law provision in the TOUs "select[ed] Texas law" (Dkt. 27 at 3 n.2) and noted "Texas law governs the contracts." *Id.* at 8. Baker did not challenge this order. After Baker's case was transferred to this Court, Baker added Plaintiffs and they collectively filed the Amended Complaint.

---

[1] This Court must accept Plaintiffs' well-pleaded facts as true on this Motion, but Defendants reserve all rights to dispute Plaintiffs' allegations that, among other things, Plaintiffs' claims exceed small claims jurisdiction, that Defendants waived arbitration, and that the arbitration agreement is unconscionable.

B. **The Current Action**

Per Plaintiffs' allegations, Match Group, Inc., Match Group, LLC, and Affinity Apps LLC are headquartered in Dallas, Texas. Am. Compl. ¶¶ 17, 18, 22. Plaintiffs allege that "substantial acts in furtherance of the alleged violations or their effects" and "[m]any of the acts alleged in this Complaint occurred in, or emanated from" Dallas, Texas. *Id.* ¶ 23. Plaintiffs allege they are "active registered members" of Defendants' "Dating Sites" and uploaded photographs of themselves to the dating sites. *Id.* ¶¶ 25-29. Plaintiffs further allege they are residents of Illinois. *Id.* Plaintiffs also allege their accounts with the dating sites are governed by contracts called TOUs, the versions of which when the Amended Complaint was filed are dated February 28, 2022, which Plaintiffs refer to as the "Revised Terms." *Id.* ¶¶ 36, 62 and Exs. P through V. Section 16 of each of the 2022 TOUs state: "To the fullest extent allowable by law, the laws of Texas, U.S.A., without regard to its conflicts of law rules, shall apply to any Dispute arising out of or relating to this Agreement or our Services." Plaintiffs further affirmatively place the 2022 TOUs or Revised Terms before this Court by seeking a judicial declaration regarding Plaintiffs' obligations thereunder. *Id.* ¶¶ 58-68. Thus, those TOUs should be enforced as written and control this action.

Plaintiffs conclusorily allege Defendants violated BIPA by collecting their individual biometric information (*id.* ¶¶ 231-34, 236-43), but do not allege the actual circumstances—that is, the facts—supporting this supposed collection. Plaintiffs' Amended Complaint flatly ignores the Texas-based choice of law clause in their TOUs and the U.S. Supreme Court's long-held pleading requirement that Plaintiffs must provide more than mere conjecture. It should be dismissed.

## LEGAL STANDARD

The applicable legal standards for this Motion are well-settled and familiar to this Court:

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must

"include enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).

*Nu-You Techs., LLC v. Beauty Town Int'l Inc.*, No. 3:15-CV-03433, 2016 WL 4717991, at *1 (N.D. Tex. July 7, 2016) (Godbey, J.); *7310 Waterbury Land Trust v. CitiMortgage, Inc.*, No. 3:14-CV-4362, at *1 (N.D. Tex. May 15, 2015) (Godbey, J.). However, "'naked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678. And speculative allegations alone will not suffice. *Twombly*, 550 U.S. at 555 (allegations must "raise a right to relief above the speculative level."); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (court should not "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

## ARGUMENT

### I.  PLAINTIFFS' CLAIMS ARE NOT COGNIZABLE UNDER APPLICABLE LAW

The first step in nearly any lawsuit is determining what substantive law applies. Here, that assessment is straightforward. Plaintiffs' TOU agreements with Defendants are governed by Texas law, per the choice of law provisions Plaintiffs attached to the Amended Complaint.[2]

---

[2] All of the TOUs attached to the Amended Complaint have a Texas choice of law provision that waives consideration of conflicts of law rules (Exs. B, D, E, P-V), except the 2018 OkCupid TOU (Ex. A), which specifies New York law and waives consideration of conflicts rules. As shown herein, Plaintiffs' Illinois claims against OkCupid must be dismissed even if New York law applies.

A.      **Plaintiffs admit they are bound by TOUs bearing Texas law clauses.**

The TOUs referenced in and attached to the Amended Complaint provide that Texas law (or perhaps New York law for certain old OkCupid claims) governs this dispute. The 2022 TOUs (all of which specify Texas law) should control, because Plaintiffs affirmatively place them before this Court by seeking a judicial declaration regarding Plaintiffs' obligations thereunder. Am. Compl. ¶¶ 58-68. But outside of that act, Plaintiffs allege: (a) Plaintiff Baker is a member of Tinder and OkCupid (*id.* ¶¶ 12, 25) and accepted their TOUs (Am. Compl., Exs. A and B); (b) Plaintiff Adams is a member of Match.com, Tinder, and OkCupid (*id.* ¶¶ 13, 26) and accepted their TOUs (Am. Compl., Exs. A, B, and R); (c) Plaintiff Abbinanti is a member of OkCupid, Tinder, and Hinge (*id.* ¶¶ 14, 27) and accepted their TOUs (Am. Compl., Exs. A, B, and S); (d) Plaintiff Bresnen is a member of Match.com, POF (Plenty Of Fish), and OurTime (*id.* ¶¶ 15, 28) and accepted their TOUs (Am. Compl., Exs. R, T, and U); and (e) Plaintiff Buchanan is a member of Tinder, Match.com, POF, OurTime, and BLK (*id.* ¶¶ 16, 29) and accepted their TOUs (Am. Compl., Exs. B, R, T, U, and V). Even the non-2022 TOUs have a Texas governing law clause, except for the 2018 OkCupid TOU, which has a New York governing law clause.

B.      **Since the choice of law provisions waive conflicts, the Court should
find that Texas law applies here without performing a Restatement analysis.**

Texas courts routinely enforce such clear choice of law provisions when one of the parties has a direct relationship with the state: "[P]arties will be held to their choice when 'the state of the chosen law [has] a sufficiently close relationship to the parties and the contract to make the parties' choice reasonable.'" *Goosehead Ins. Agency, LLC v. Williams Ins. and Consulting, Inc.*, 533 F. Supp. 3d 367, 382 (N.D. Tex. 2020) ("*Goosehead*"); *see also* Restatement § 187 (burden on party challenging choice of law to show no substantial relationship to the forum exists). Texas' stated public policy on choice of law supports this. *Goosehead*, 533 F. Supp. 3d at 382 ("When a

transaction bears a reasonable relation to this state . . . the parties may agree that the law . . . of this state . . . shall govern their rights and duties." (quoting Tex. Bus. & Com. Code Ann. § 1.105(a))).

Texas also follows the "contracting party autonomy" rule where the parties' choice of law will be given effect to fulfill their expressed expectations. *Id.* And Texas courts follow Restatement § 187, which carries a strong presumption in favor of applying "the law of the state chosen by the parties to govern their contractual rights and duties." *See also* Restatement § 187 cmt. e ("The parties can be assumed to have intended that the provisions of the contract would be binding upon them."). Thus, the parties' chosen law is presumptively valid, and Plaintiffs have a difficult burden to supersede that choice.

Texas has a sufficiently close relationship to the parties and contracts to make the choice reasonable: The entities that operate all the dating sites are headquartered here, and Plaintiffs admit that "substantial acts in furtherance of the alleged violations or their effects" occurred here and venue is proper here. *Id.* ¶ 23. For these reasons alone, this Court should apply Texas law to the parties' dispute and dismiss Plaintiffs' Illinois law-based BIPA claims.[3]

And Plaintiffs contractually waived any exception to applying Texas law because the choice of law clause expressly precludes consideration of Texas's "conflicts of law rules." That ends the inquiry. *Mission Techs. Inc. v. STMicroelectronics Inc.*, No. 3:23-CV-0445, 2024 WL 150504, at *3 n.40 (N.D. Tex. Jan. 11, 2024) (Starr, J.) ("The parties' mutually-agreed-to contract

---

[3] The 2022 OkCupid TOU with Texas law provision (Ex. P) is relied on by Plaintiffs and should apply here. But if the pre-2022 OkCupid TOU (Ex. A) controls, then New York law governs those claims. And New York law is even more strict in upholding choice-of-law agreements: "[W]hen the parties have chosen New York law, a court may not contravene that choice through a common-law analysis." *Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, ___ N.E.3d ___, 2024 WL 674251, at *6 (N.Y. Feb. 20, 2024) (citing cases). New York law does not permit consideration of the Restatement, so even if New York law applies to Plaintiffs' OkCupid BIPA claims, they still must be dismissed.

states that Texas law applies 'without regard to its conflicts of law provisions.' Therefore, it's likely that Mission Technologies has contractually waived its argument that one of Texas's exceptions to its choice-of-law principles applies." (citation omitted)); *see also Mastrobuono v. Shearson Lehman Hutton Inc.*, 514 U.S. 52, 59 (1995) ("The choice-of-law provision . . . may reasonably be read merely as a substitute for the conflict-of-laws analysis that would otherwise determine what law to apply to disputes arising out of the contractual relationship"); *Ministers & Missionaries Benefit Bd. v. Snow*, 45 N.E.3d 917, 922 (N.Y. 2015) ("[C]ourts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract"); *Thakkar v. ProctorU, Inc.*, 642 F. Supp. 3d 1304, 1311 & n.4 (N.D. Ala. 2022) (acknowledging waiver of conflicts of law consideration point). Thus, this Court should enforce the parties' agreement and apply Texas law to this action.

### C.    The parties' choice of law is also enforceable under the Restatement analysis.

As noted, there's no reason to conduct a conflicts of law analysis because the parties waived same in the TOUs' governing law provision. If this Court nevertheless analyzes the Restatement factors, it still should conclude that Texas' "strong public policy in favor of preserving the freedom of contract" calls for enforcing the contracts as written. *Mission Techs.*, 2024 WL 150504, at *3. When performing a conflict-of-laws analysis, Texas courts look to Restatement § 187(2)(b) "to determine whether a choice of law provision is enforceable." *Nabors Drilling Techs. USA Inc. v. Deepwell Energy Servs. LLC*, 568 F. Supp. 3d 756, 765 (S.D. Tex. 2021) ("*Nabors*"). And unless another state has a more significant relationship, with the parties and transaction, a materially greater interest, and a fundamental public policy that enforcement would contravene, Texas courts enforce contractual choice of law:

> **In short, the parties' selection controls** unless the other state "(1) has a more significant relationship with the parties and the transaction at issue than the chosen state does under Restatement § 188; (2) has a materially greater interest than the

chosen state does in the enforceability of a given provision; and (3) has a fundamental policy that would be contravened by the application of the chosen state's law." **All three elements must be satisfied before a Texas court may deviate from the contract's choice of law.**

*Nabors*, 568 F. Supp. 3d at 766 (quoting *Cardoni v. Prosperity Bank*, 805 F.3d 573, 582 (5th Cir. 2015)) (emphasis added).[4] As shown herein, Illinois does not have a more significant relationship with the parties and the claims nor a greater interest in them than Texas.

> 1.   **Weighted assessment of contacts with each state**
>       **in light of basic conflict of laws principles shows**
>       <u>**Texas has a more significant relationship to the parties and claims.**</u>

The inquiry into which state has a more significant relationship involves two parts: (1) a quality-weighted assessment of the § 188(2) contacts with each state; and (2) consideration of the weighted contacts "in light of the basic conflict of laws principles of section 6 of the Restatement." *Nabors*, 568 F. Supp. 3d at 766-67. The § 188(2) contacts are: (a) place of contracting; (b) place of contract negotiation; (c) place of performance; (d) location of subject matter of contract; and (e) the residence of the parties." *Id.* at 767. Each weigh in favor of applying Texas law.

> a.   **The quality-weighted assessment of**
>       <u>**contacts favors applying Texas law.**</u>

The place of contracting and negotiation occurred in separate states, so these are "relatively insignificant contact[s]."[5] And—based on Plaintiff's allegations—the acts they complain of (allegedly failing to publicly provide a retention schedule or guidelines for destroying Plaintiffs'

---

[4] *See also Grosser v. Red Mango FC, LLC*, No. 3:12-CV-2691, 2013 WL 12134086, at *7 (N.D. Tex. Apr. 25, 2013 (Godbey, J.) ("Texas courts enforce choice of law provisions unless . . . there is a state with a materially greater interest in the dispute *and* applying the chosen law is against a fundamental policy of the state with the materially greater interest."); *Blue Racer Midstream, LLC v. Kelchner, Inc.*, No. 3:16-CV-3296, 2018 WL 993781, at *4 (N.D. Tex. Feb. 21, 2018) (same).

[5] *Nabors*, 568 F. Supp. 3d at 767. Users across the country enter into the same contract with Defendants regardless of where they are located. Thus, their location when they sign up for the services or upload photos is fortuitous and immaterial to the contract terms and to Defendants' performance. For this reason, Defendants need the certainty of a single state's law applying.

biometric identifiers; and collecting, storing, using, and sharing Plaintiffs' biometric identifiers) could only have been performed in Texas. Indeed, Plaintiffs admit "substantial acts in furtherance of the alleged violations or their effects have occurred in [Texas] and "Many of the acts alleged in this Complaint occurred in, or emanated from [Texas]." Am. Compl. ¶ 23. And this contact is due significant weight. *See Nabors*, 568 F. Supp. 3d at 768 (location of performance is determinative and is to be provided significant weight). For subject matter location, this contact looks at "the location of the subject matter of the *particular issue to be* resolved under the contract." *Nabors*, 568 F. Supp. 3d at 769. Here again, Plaintiffs allege the relevant decisions concerning the services provided under the TOUs were made in Texas. Am. Compl. ¶ 23.[6] Thus, Texas is the dominant location involved.

### b. Analyzing the weighted factors in light of Section 6 principles confirms Texas law applies.

The rest of the analysis evaluates the above weighted contacts "in light of the basic conflict of laws principles of section 6 of the Restatement." *Nabors*, 568 F. Supp. 3d at 766-67. Section 6 has seven principles: (a) needs of the interstate and international systems; (b) relevant policies of the forum; (c) relevant policies of other interested states; (d) protection of justified expectations; (e) basic policies; (f) certainty, predictability and uniformity of result; and (g) ease in the law's application. Restatement § 6(2). These will be discussed in order of significance in the analysis.

---

[6] Plaintiffs allege no acts or omissions in Illinois, merely that Plaintiffs "uploaded photographs . . . while residing in the State of Illinois." Am. Compl. ¶¶ 12-16. But the photos Plaintiffs uploaded are not even protected under BIPA. *See* 740 ILCS 14/10 ("Biometric identifier" does "not include . . . photographs" and "Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers"). When the contract covers an issue, where the conduct occurred is significant. Restatement § 188 cmt. e. This contact strongly supports applying Texas law as Plaintiffs allege the conduct occurred here. Am. Compl. ¶ 23.

(i)      **Protection of justified expectations
requires enforcing the parties' agreement.**

"In cases with a choice-of-law provision in an agreement, protection of the justified expectations of the parties **is the most significant and important factor in the choice-of-law analysis**." *Nabors*, 568 F. Supp. 3d at 771 (emphasis added); *see also Goosehead,* 533 F. Supp. 3d at 383 ("Texas has the most significant relationship because the parties themselves intended to bind themselves to such a finding"). Here, given the unambiguous choice of law clause, the parties could only have expected Texas law to apply.

(ii)     **Certainty, predictability, and uniformity of
result require enforcing the parties' agreement.**

Per the Texas Supreme Court, "Enforcing contracts according to their own terms satisfies the relevant policies of the forum, **enhances certainty, predictability, and uniformity of result**, and facilitates commerce and relations with other states and nations." *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 235 (Tex. 2008) (emphasis added). This is the second most important of the Section 6 factors, only slightly behind protection of justified expectations. *Id.* The parties agreed to the law of the state where Match Group's (and its subsidiaries') headquarters are located. Users create accounts on Defendants' dating sites many times a day, and this can only occur efficiently when there is certainty in applicable law. This principle would be greatly undermined by the application of 49 other states' laws based on nothing other than the location where the user happens to be when they create an online account with Texas-based companies. *Cf. Snow*, 45 N.E.3d at 923 ("It seems unlikely that MMBB intended to have its contracts . . . interpreted in many different ways based on the whim and movements of its plan members.").

11

(iii)     **The needs of the interstate and international systems
are met by holding contracting parties to their bargains.**

"Industry and commerce cannot operate in a climate that allows a contracting party who
makes a bad bargain to change the terms of a deal at its option." *Nabors*, 568 F. Supp. 3d at 770
(citation omitted). Allowing parties or class-action counsel to cherry pick any state's law to create
a class action when it suits them undermines the contractual certainty interstate commerce depends
on.[7] *See Thakkar v. ProctorU Inc.*, 571 F. Supp. 3d 927, 941 (C.D. Ill. 2021) (enforcing Alabama
choice of law clause, finding Alabama had "an interest in this case, as Defendant is headquartered
in Alabama and relevant decisions are made at the Alabama headquarters, not in each of the
individual states where its proctoring software may be used."). Just as in *Thakkar* and *Nabors*, this
Court should find "this principle weighs heavily in favor of applying Texas law—and not . . .
expedient arguments in favor of [another state's] law." *Nabors*, 568 F. Supp. 3d at 770. Defendants
cannot know when BIPA would apply to a user—and that is why the certainty of applying Texas
law is critical to this sort of interstate commerce.[8]

(iv)     **Texas law is easy for the Court to apply.**

"Ideally, choice-of-law rules should be simple and easy to apply." Restatement § 6 cmt. j.
By selecting Texas law and Texas venue, the parties made the application of law easy and simple
for this Court, as opposed to this Court needing to apply the law of a foreign jurisdiction. And
while this Court could apply Illinois law in this case, enforcement of the TOUs' choice-of-law

---

[7] Plaintiffs' New York-based counsel specifically advertised for Illinois residents to bring these claims.     *See*     https://www.accesswire.com/649967/attention-illinois-dating-site-users-labaton-sucharow-pursuing-claims-against-match-group-companies-for-illegal-use-of-facial-recognition-technology (last visited March 25, 2024).

[8] For example, would BIPA apply to users in Illinois when they create their account but later move to Texas and then upload photos? Would it apply to someone from New York who creates an account or uploads a photo while waiting for a connecting flight at O'Hare? Would it apply to someone who creates an account in Colorado and uploads photos there, but later moves to Illinois?

provisions should not depend on the specific claims brought and this Court should not have to potentially analyze 49 other states' laws, based on where a user was at the time he signed up or made a claim.  That would be the antithesis of "simple and easy to apply."

(v)   **Texts public policy as expressed by the
Texas legislature supports applying Texas law.**

Texas' public policy interest "outweighs a foreign state's interest in enforcing its laws, even when application of Texas's laws would deprive a litigant of a cause of action." *Mission Techs.*, 2024 WL 150504, at *3 (applying Texas law resulted in dismissal of Minnesota law claims). Texas courts also enforce other state's choice of law provisions to dismiss Texas residents' Texas statutory claims.[9] As these decisions explain, "this is a feature, not a bug of choice-of-law provisions, as it has the intended effect 'of preventing one party from getting to use the laws of all the excluded jurisdictions.'" *Mission Techs.*, 2024 WL 150504, at *3; *Demond*, 2018 WL 4145053, at *8 (same).

Additionally, Texas has its own public policy of how best to regulate the use of biometric identifiers. In 2001, the Texas legislature passed the Capture or Use of Biometric Identifier Act ("CUBI").[10] Plaintiffs do not suggest that Defendants' acts or omissions are limited to only Illinois users' biometric information. Rather, they suggest Defendants are doing the same thing everywhere. *See, e.g.*, Am. Compl. ¶¶ 6-9. This further demonstrates that the Texas Attorney

---

[9] *See Demond v. Infiniti HR, LLC*, No. 3:17-CV-1322, 2018 WL 4145053, at *8 (N.D. Tex. Aug. 30, 2018) (dismissal of statutory claims "not a sufficient basis for holding enforcement of a forum selection or choice-of-law clause unreasonable").

[10] CUBI requires informed consent before collection, sets time restrictions for retention and destruction, and prohibits Texas companies from selling, leasing, or disclosing biometric data unless an exception applies. Tex. Bus. & Com. Code Ann. § 503.001(b)-(c). The Texas Attorney General enforces these requirements and may seek statutory penalties of up to $25,000 per violation. *Id.* § 5003.001(d). And the Texas Attorney General takes its enforcement duties seriously, pursuing major companies such as Meta (Facebook) for alleged CUBI violations.

13

General is better equipped to regulate any alleged wrongdoing than a putative class of only Illinois residents. Thus, Texas has a greater interest in the enforcement of its laws than Illinois, especially when the alleged misconduct allegedly occurred at Defendants' Dallas, Texas headquarters. Am. Compl. ¶¶ 17-18, 23.

CUBI is different from BIPA in an important respect: The Texas Legislature left enforcement of CUBI up to the Attorney General, who is best positioned to enforce complex and technical laws, and eliminates gamesmanship by the plaintiff's bar. This is an important public-policy choice this Court should respect.

Given the parties' chosen law and waiver of conflicts considerations; the substantial relationship with Texas; and Texas' strong public policy favoring freedom of contract and strong public policy in applying CUBI, there is no basis for Illinois's BIPA statute to supersede CUBI and longstanding principles of Texas law.

(vi)   **Applying Texas law does not violate public policy of Illinois.**

Illinois case law demonstrates it does not violate Illinois public policy to enforce the Texas choice of law provision here, even though it means Plaintiffs cannot sue under BIPA. Illinois courts consistently enforce choice of law provisions even where those provisions bar an Illinois resident from invoking an Illinois-specific statute.[11] *See also Potomac Leasing Co. v. Chuck's Pub, Inc.*, 509 N.E.2d 751, 754 (Ill. App. Ct. 1987) (enforcing a Michigan choice of law provision and dismissing Illinois statutory defense). In that case, the court explained the standard for violating

---

[11] *See WTM, Inc. v. Henneck*, 125 F. Supp. 2d 864, 868 (N.D. Ill. 2000) (fact that plaintiff's statutory rights "are not available under the chosen state's law does not invalidate a choice-of-law provision as contrary to public policy"); *see also M. Block & Sons, Inc. v. Int'l Bus. Machs. Corp.*, No. 04 C 340, 2004 WL 1557631, at *7 (N.D. Ill. July 8, 2004) (dismissing Illinois resident's statutory claim because public policy concerns were not "sufficient to override the contract terms"); *Telular Corp. v. Mentor Graphics Corp.*, 282 F. Supp. 2d 869, 871 (N. D. Ill. 2003) (same); *Mell v. Goodbody & Co.*, 295 N.E.2d 97, 100 (Ill. App. Ct. 1973).

14

Illinois public policy: the contractual provision must be "contrary to pure morals and abstract justice" or an "evil example and harmful to its people." *Id. Accord Curtis v. FCA US, LLC*, No. 16-cv-50285, 2019 WL 1589746, at *3 (N.D. Ill. Apr. 12, 2019). Neither of those dangers is implicated by the choice of law provision here, particularly when Texas has its own biometric privacy statute in CUBI.

In line with these decisions, an Alabama federal court dismissed Illinois plaintiffs' BIPA claims in the face of an Alabama choice-of-law clause, ***even without a similar biometric privacy statute like CUBI***. *Thakkar*, 642 F. Supp. 3d at 1320. The court relied on the Alabama Supreme Court's finding—similar to Texas' public policy—that "Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement." *Id.* at 1315-16. Although the court there did not conduct a Restatement analysis, this Court need not conduct one either given the TOUs' express waiver of consideration of Texas choice of law rules.

In sum, BIPA does not require overriding (i) Texas's longstanding public policy interest in freedom of contract where one party is a Texas resident and (ii) Texas' public policy that biometric privacy should be enforced by the state's highest law enforcement official.

(vii)   **§ 6 factors confirm Texas has a more significant relationship**.

The significant Restatement § 6 principles—protection of parties' expectations; certainty and uniformity of result; and the needs of the interstate and international system—self-evidently weigh in favor of applying Texas law because Texas has a more significant relationship with the alleged conduct than does Illinois. Indeed, Plaintiffs confirm this. Am Compl. ¶ 23. *See also Goosehead,* 533 F. Supp. 3d at 382 ("both Michigan and Texas have a relationship to the parties, but Michigan's relationship is not *more* significant than Texas'"). Because Illinois does not have a more significant relationship with the dispute than  Texas (indeed, Texas has a more significant

relationship), "the remaining factors under Restatement § 187(2)(b) needn't be considered." *Nabors Drilling Techs.*, 568 F. Supp. 3d at 772.

### 2. <u>Illinois does not have a materially greater interest than Texas.</u>

Even if this Court finds Illinois has the most significant relationship, Plaintiffs cannot show "there is a state with a materially greater interest in the dispute *and* applying the chosen law is against fundamental policy of the state with materially greater interest." *Goosehead,* 533 F. Supp. 3d at 382-83. Illinois does not have a materially greater interest in having its law apply than Texas has in having Texas law apply. In *Blue Racer*, there was a pipeline explosion in Ohio involving work by the defendant in Ohio under a contract with a Texas resident containing a Texas choice-of-law clause. *Blue Racer*, 2018 WL 993781, at *1. Judge Kinkeade had no difficulty enforcing the clause: "This case is based on a contract with a . . . choice-of-law clause entered into by a Texas resident. Texas has a strong interest in enforcing its residents' transactions and contracts." *Id.* at *4; *see also Goosehead*, 533 F. Supp. 3d at 382-83. Even more, Plaintiffs allege here that the wrongdoing occurred in Texas. Am. Compl. ¶ 23. And BIPA does not apply outside of Illinois, even when Illinois residents are involved.[12] Lastly, as shown, BIPA does not trump the public policy considerations of applying Texas law here. There is no basis to find Illinois has a materially greater interest in applying its law than Texas does in applying its biometric privacy law to a contract entered into by a Texas resident with a clear choice of law clause.

### 3. <u>Application of Texas law would not contravene fundamental Illinois policy.</u>

Plaintiffs have the burden of demonstrating the application of Texas law would contravene a fundamental Illinois policy. *See Goosehead,* 533 F. Supp. 3d at 384; *Grosser*, 2013 WL 12134086, at *7. Plaintiffs cannot meet their burden. "Without the presence of another state's

---

[12] *McGoveran v. Amazon Web Servs., Inc.*, No. 20-cv-1399, 2021 WL 4502089, at *3 (D. Del. Sept. 30, 2021); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017).

fundamental policy embodying a materially greater interest, the choice-of-law provision should be enforced." *Goosehead,* 533 F. Supp. 3d at 384. As discussed above, Illinois law enforces other states' choice-of-law provisions, even when they preclude Illinois residents from asserting statutory claims. The only exception is cases where the legislature has made it clear citizen's rights under such statutes cannot be waived.[13] That is not what the legislature did with BIPA.

This is a case where state legislation cannot apply in the face of an agreed-to choice-of-law provision. *See Goosehead,* 533 F. Supp. 3d at 384; *Mission Techs.*, 2024 WL 150504, at *3; *Thakkar*, 642 F. Supp. 3d at 1311, 1320. There is simply no rational way to square the principles of Sections 6 and 188 of the Restatement (place of performance, location of subject matter, protection of justified expectations, predictability and uniformity, and the needs of interstate commerce) with allowing one state's law to override a clear and unambiguous choice of law provision, and certainly not when Texas' strong public policy is to enforce written agreements entered into by its residents. Because Texas law applies to this action, Plaintiffs' claims under BIPA should be dismissed with prejudice.[14]

## II. THE AMENDED COMPLAINT DOES NOT PLAUSIBLY SHOW DEFENDANTS VIOLATED BIPA

If this Court somehow finds that Illinois law applies, it should still dismiss Plaintiffs' Amended Complaint because it does not plausibly allege any actual violation of BIPA. Plaintiffs' entire theory of BIPA violations is based on hopelessly speculative and conclusory statements.

---

[13] *Doe v. Match*, No. 11 L 3249, 2012 Ill. Cir. LEXIS 3350, at *9 (Ill. Cir. Ct., Oct. 25, 2012). There, the court found that by including anti-waiver and unenforceability provisions (neither of which are in BIPA) in that statute, "the legislature stated a clear public policy." *Id.*

[14] The OkCupid claims must be dismissed even if New York law applies to them. *See supra* n.3.

A. **Plaintiffs' broad allegations, although stated as fact, are mere fantasy.**

The Amended Complaint contains multiple naked conclusions that attempt to paint a picture of Defendants greedily using Plaintiffs' biometric information in every illicit way possible. But Plaintiffs plead no facts to support their allegations, and none exist. These are a few of the most egregious examples, all pleaded "[u]pon information and belief" (Am. Compl. ¶ 145):

- "Match Group uses facial processing technology to prevent 'bad actors' from getting back on its sites after being removed. . . . Upon signing up, a face scan of every new user is generated and compared against the bad actors' face scans to deny bad actors re-entry." *Id.* ¶ 146
- "Match Group uses facial processing technology to provide users with potential matches that fit their preference, e.g., certain shades of faces (skin tone)." *Id.*
- "Match Group employees can confirm whether any person is a user on its site simply by uploading a photograph and processing it through the site's backend." *Id.*

But all these allegations share the same flaw: They are not backed up by facts showing Defendants *actually do these practices*.[15] Rather, even in the light most favorable to them, Plaintiffs only allege what Defendants *could* or *might* do. Indeed, the nature of Plaintiffs' allegations (such as allowing a user to match based upon "preferences" or that "Match Group uses facial processing technology to create user-specific Avatars") are consumer-facing. Plaintiffs could actually point to specific examples, instead of falling back on "information and belief."

This failure to point to any actual use of biometrics in violation of BIPA is made all the more egregious by the fact that, as Plaintiffs acknowledge, certain brands, including Tinder, have features that *do* collect biometric information, *after getting informed consent of the user* (which complies with CUBI and BIPA if it applied to Defendants). As shown in Am. Compl. ¶ 140, Fig.

---

[15] *See U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) ("[E]ven where allegations are based on information and belief, the complaint must set forth a factual basis for such belief."); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (information and belief allegations must still be made "based on factual information that makes the inference of culpability plausible").

23, Tinder's photo verification process notes: "We'll use facial recognition technology . . . by comparing your facial geometry in your selfies and profile pics." And the California Privacy Statement (*id.* ¶ 142 n.89) makes clear that biometric collection for Tinder is only "if you use our photo verification feature." Thus, despite making clear that Defendants know how to comply with BIPA, and that any uses of biometrics would be evident and could be pointed out by them, Plaintiffs' allegations boil down to conjecture and insinuations. These allegations do not hold up, as explained below.

### B.    Defendants' ownership of patents is not evidence they use biometric information.

Plaintiffs baldly claim "Defendants' use of facial recognition technology is irrefutable [because] Defendants' patents confirm the companies' use of facial recognition technology and collection of biometric data." Am. Compl. ¶ 147; *see also id.* (Defendants' patents enable them "to collect, share, and retain sensitive biometric data of all users without users' knowledge or consent").[16] But patents do not *do, enable, or confirm* anything. While a patent's claims delineate the owner's right to exclude others from practicing the patented invention, mere patent ownership does not mean the owner practices it. "[A] patent grants only the right to exclude others" from practicing a claimed invention. *See Emblaze Ltd. v. Apple Inc.*, No. 5:11-cv-1079, 2015 WL 396010, at *8 (N.D. Cal. Jan. 29, 2015), aff'd, 639 Fed. Appx. 639 (Fed. Cir. 2016). And "patent rights do not depend upon the exercise of [the patentee's] rights." *King Instruments Corp. v.*

---

[16] This pattern of "naked assertions" not entitled to the presumption of truth and not sufficient to state a plausible claim for relief continues throughout. *See* Am. Compl. ¶ 158 ("Defendants' patents [confirm biometric data] is stored on the Defendants' databases"); ¶ 172 ("there can be no dispute that the Dating Sites function and operate in accordance with Defendants' issued patents"); ¶ 173 ("It is indisputable that the Dating Sites function exactly as described in Patent 811"); ¶ 190 ("A close review of [Patents] indisputably confirms the use of factual recognition technology"); ¶ 204 ("Hyperconnect's issued patents confirm the use of facial recognition technology and the collection and capture of biometric information and identifiers"); ¶ 206 ("Hyperconnect's issued patents also confirm the use of voice recognition technology and collection of biometric data").

*Perego*, 65 F.3d 941, 949 (Fed. Cir. 1995). The Supreme Court has held that an "invention" within the meaning of the Patent Act "unquestionably refers to the inventor's conception rather than to a physical embodiment of that idea," and "[t]he statute does not contain any express requirement that an invention must be reduced to practice before it can be patented." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 60 (1998). The mere fact that a defendant received a patent does not create an inference that the defendant is practicing all, or even any, elements of the patent. *See Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 334 (5th Cir. 2014) (holding existence of patent application for a design did not mean it had or could have been implemented); *Nu-You Techs.*, 2016 WL 4717991, at *2 (allegations on information and belief failed to plausibly allege defendant performed every step of the method claimed in its patent).

But Plaintiffs' lawsuit is premised on the allegation that ownership of a patent necessarily constitutes practicing not only the patented invention, but alternative embodiments as well. Incredibly, Plaintiffs extend this theory to even patents that Defendants *acquired from a third party*. Perhaps indicative that this line of argument is based on fundamental misconceptions of the patent system, Plaintiffs allege the patents are evidence of Defendants practicing them as of the issue dates. *See* Am. Compl. ¶ 189 & n.160. Using Plaintiffs' logic, patent holding companies (pejoratively known as "patent trolls") are actually practicing the patents rather than holding them for economic advantage, which is obviously not true. None of this is legally sufficient. Plaintiffs merely speculate, based on Defendants' patent ownership, that their matching algorithms use biometric information, and also collect, share, and retain it. Plaintiffs have not pleaded any additional facts showing Defendants took any prohibited action under BIPA (or CUBI). *See Jones v. Microsoft Corp.,* 648 F. Supp. 3d 679, 683 (N.D. Ill. 2023) (dismissing complaint because the plaintiff failed to allege that the defendant took an active step of collecting biometric information

20

and noting that a BIPA violation "contemplates some affirmative effort"); *Clark v. Microsoft Corp.*, No. 23 C 695, 2023 WL 5348760, at *2 (N.D. Ill. Aug. 21, 2023) (holding the same and citing additional dismissals). Because of this, Plaintiffs' claims, which rely primarily upon the idea that owning patents prove underlying facts, fail.

### C.     It would be apparent if Defendants were using the Yahoo! "Face Search" invention.

Beyond the fact that Plaintiffs merely speculate that Defendants (all of them) practice certain patents, the Amended Complaint does not allege, or contain any evidence, that Defendants' dating services actually contain the patented features or that the Plaintiffs used them. In particular, Plaintiffs allege the Match Group-acquired Yahoo! "Face Search" patent describes a search method using biometric information: "a method for searching personal profiles for similar physical features to an ex-boyfriend or ex-girlfriend" and "various embodiments in which users could select a 'target image' that has features that a user finds desirable or limit their search to a specific feature the user finds attractive." Am. Compl. ¶ 164-65. These are, by definition, **user-accessible** search features, which do not exist in Defendants' services, and if they did, Plaintiff could actually identify the feature and describe it in the Amended Complaint. Although the Amended Complaint contains numerous images comparing patent figures to Defendants' apps and websites, tellingly none include this allegedly BIPA-violating functionality.

### D.     The "Matching Process" patents don't claim any biometric invention.

The Amended Complaint goes on for pages about the invention claimed in the '811 patent and its progeny, and how certain Defendants' apps practice this invention. Am Compl. ¶¶ 166-173. The dating-app revolution started by Tinder and the invention described in this patent is indisputable. But it has nothing to do with biometrics or facial recognition. Yet, Plaintiffs refer to the '811 patent's invention as outlining "Tinder's facial recognition algorithm." *Id.* ¶ 189. But

21

there is no facial-recognition algorithm described in the '811 patent. The lone mention of facial recognition in all twenty-nine pages of the patent is the specification's statement that in **alternative embodiments** (not the patent claims), a matching server "may also use implicit signals such as . . . facial recognition algorithms to detect ethnicity, hair color, eye color, etc." '811 Pat. c. 19 ll. 54-58. *See* App. 0023. There is no description of how such a thing would work, and it's not claimed as part of the invention. Nor do Plaintiffs plead any facts to support a claim that this is actually implemented in Tinder, Match.com, OkCupid, BLK, or Chispa. Again, the figures and screenshots in the Amended Complaint all show *different* functionality. Am Compl. ¶¶ 167-71.[17]

### E.  None of Plaintiffs' remaining allegations rise above mere speculation.

Just like their allegations about the patents, Plaintiffs' other allegations don't stand up to scrutiny. Perhaps most egregious is their claim that Defendants' suggestion that users upload "unobstructed, clear photos that are big enough for potential matches to see clearly" is evidence of illegal biometric collection (as opposed to what they otherwise acknowledge it is useful for—so that other users are able to see the user's face in order to decide whether to match with them.  If this argument were credited, Plaintiffs could argue that *every* user-facing social media platform would be presumed to violate BIPA.  That simply cannot be the case.

This is also true with respect to Plaintiffs' "naked assertions" devoid of further factual enhancement, that "[u]pon information and belief," OkCupid uses the perceptual hash function to collect and store biometric information in violation of BIPA. Am. Compl. ¶¶ 186-88. Emblematic of their arguments, Plaintiffs note something true—"Perceptual hash ("pHash") algorithms are **implemented** in facial recognition systems" (*id.* ¶ 184) (emphasis added)—and then use that to

---

[17] Plaintiffs try to tie Tinder's functionality with the Yahoo! invention based on the fact that the '811 is a continuation in part of an earlier Match.com patent (unrelated to Yahoo!). Am. Compl. ¶ 189. This seems to be based on a fundamental misunderstanding of patent applications.

implausibly suggest pHash is a facial recognition system. These allegations are not well-pleaded facts that can sustain a claim for relief. The allegations actually contradict Plaintiffs' point, noting that pHash is used to find similar **photos** not similar **faces**.[18]

Similarly, the allegations as to Amazon Rekognition belie Plaintiffs' conclusions. Plaintiffs suggest because Defendants **could** use Rekognition for facial recognition, they **must**. But the material Plaintiffs reference shows that reasoning does not follow. First, the Rekognition manual they cite makes clear you don't have to use them all but can "use a subset of Amazon Rekognition's capabilities such as object and scene detection, facial analysis, and face comparison in a set of images." *See* Am. Compl. ¶ 192 n.165. Second, the Tom Jacques interview that Plaintiffs quote makes clear that Tinder uses it only for object and scene detection.[19] Thus, the allegations about Rekognition do not support a BIPA claim. Relatedly, the only allegations regarding BLK and Chispa are that they "also use the same technology and facial recognition software as Tinder." *Id.* ¶ 198. Plaintiffs allege no facts to support this hopelessly conclusory statement and the claims against BLK and Chispa should therefore be dismissed.

Plaintiffs likewise try to make Match.com guilty by association from an old partnership with another company, Three Day Rule. But as the allegations and material (*id.* ¶ 175 & n.142) cited by Plaintiffs make clear: (1) Three Day Rule was a different entity not controlled or operated by any Defendant, (2) Match users were not required to join to participate, but "Match users can,

---

[18] Plaintiffs' only other allegation regarding OkCupid, that OkCupid permitted Clarifai to "harvest OkCupid's user's biometric identifiers" from 2014-2019 (Am. Compl. ¶ 177), is demonstrably false. Any alleged action by **third-party** Clarifai was a one-time event in 2014. *See, e.g., Stein v. Clarifai, Inc.*, 526 F. Supp. 3d 339, 341-42 (N.D. Ill. 2021); *FTC v. Match Group, Inc.*, No. 1:22-mc-54, 2023 WL 3181351, at *2 (D.D.C. May 1, 2023); *Id.*, Dkt. 46 (Mar. 12, 2024 Report) at 5.

[19] Am. Compl. ¶ 196 n.171 (https://www.youtube.com/watch?v=yNVmUevq04I) (discussing at 9:15 Tinder's use of Rekognition "scene and object detection" and from 14:17-14:26 saying "Privacy is also really important to us, like I mentioned, and Rekognition provides separate APIs that provide control and allow us to access only the features that we want.").

for free, opt-in to Three Day Rule's database," (3) the facial recognition process was done by Three Day Rule, not Match, and (4) the biometric collection and use was evident, as it was asking questions about attributes such as hair color. Thus, if Match were currently offering these features, *it would be evident*.[20]

Further, Plaintiffs allege without basis that to solve POF's desire to "remove face-filtering imagery" from its platform, "POF must employ artificial intelligence and facial recognition techniques." Am. Compl. ¶ 199. But again, Plaintiffs give no reason why this is so, as compared to human review (what POF actually does), and even if it employs artificial intelligence, that does not necessarily mean it uses *facial recognition* in violation of BIPA.

Finally, Plaintiffs' allegations that Defendant's acquisition of Hyperconnect, a non-defendant (*id.* ¶¶ 200-09), necessarily means Defendants are utilizing its facial recognition features in violation of BIPA now and in the future embodies the glaring problems throughout the Amended Complaint. In fact, the section heading for these allegations makes clear that Plaintiffs are grasping at straws: "Defendants' Recent Acts ***Prove They Intend to Delve Further*** into Biometric Data Collection as Evidenced in Their Acquisition of Hyperconnect, Inc." *Id.* at 96 (emphasis added). Unable to point to any facts showing Defendants are currently utilizing Hyperconnect's technology in violation of BIPA, Plaintiffs assume that Defendants may do so in the future. Even if that were so, this would not show an intent to illegally thwart biometric privacy laws, since Plaintiffs' allegations regarding Tinder's photo verification feature make clear that Defendants know how to comply with biometric privacy laws, and actually do, when biometrics are collected.

---

[20] Likewise, the allegation that "Match.com, OkCupid, OurTime, and POF offer users the ability to limit their search to specific physical characteristics" (Am. Compl. ¶ 165) is irrelevant. As Plaintiffs acknowledge, users provide information about physical characteristics, like "weight[] and height." *Id.* ¶ 6.

Plaintiffs' aim of overwhelming this Court through the sheer magnitude of pages falls apart upon an examination of the actual claims. Even if BIPA applies (it does not), Plaintiffs allege no viable claim and thus the Amended Complaint should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed in its entirety with prejudice.

Dated: April 1, 2024                        Respectfully submitted,

**DLA PIPER LLP (US)**
/s/ *Robert M. Hoffman*
Rob Hoffman
Texas Bar No. 09788200
rob.hoffman@us.dlapiper.com
John C. Canoni
Texas Bar No. 24117335
john.canoni@us.dlapiper.com
1900 N. Pearl Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 743-4500
Facsimile: (214) 743-4545

**Counsel for Defendants**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of April, 2024, a true and correct copy of the foregoing document was served via the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ *Robert M. Hoffman*
Robert M. Hoffman