# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| MARCUS BAKER, et al., | |
| Plaintiffs, | Civil Action No.: 3:23-CV-02761-N |
| - vs - | Hon. David C. Godbey |
| MATCH GROUP, INC., et al., | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

The Court should dismiss the Amended Complaint with prejudice for two independent reasons: (1) Plaintiffs agreed Texas law governs any dispute they have with Defendants; and (2) Plaintiffs' speculative claims do not establish a plausible inference that any Defendant actually processed Plaintiffs' biometric information without consent. Plaintiffs' Opposition (Dkt. 75) cannot overcome these two deficiencies. Rather, the Opposition relies on irrelevant cases, misconstrues the relevant decisions, and fails to recognize Texas' strong public policy interests, including a robust biometric privacy statute (CUBI) regulating Defendants' conduct and providing greater remedies to Plaintiffs than BIPA.

## I. Plaintiffs Waived Any Exception to Applying Texas Law.

Plaintiffs do not dispute they agreed to the Texas choice of law provision, including the waiver of Texas' "conflict of laws rules." This fact alone is dispositive. And Plaintiffs don't argue the provision is unconscionable. Instead, they baldly argue the Court should ignore the key phrase "without regard to [Texas'] conflict of laws rules." But disregarding contract terms undermines the sanctity of contracts. Texas (like every state) "has a strong public policy interest in enforcing contracts as written." *Mission Techs. Inc. v. STMicroelectronics Inc.*, No. 3:23-CV-0445, 2024 WL 150504, at *3 (N.D. Tex. Jan. 11, 2024) (Starr, J.) (citing *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 812 (Tex. 2012)). *See also Moayedi v. Interstate 35/Chisam Road, L.P.*, 438 S.W.3d 1, 6 (Tex. 2014) ("[T]his Court's decisions respect the strong public policy of respecting parties' freedom to design agreements according to their wishes.").

Plaintiffs cite no case where a court expressly considered the very common "without regard" language and did not apply the chosen state's law.[1] By contrast, there are numerous

---

[1] Plaintiffs' claim that courts reject Defendants' position (Opp. at 6) is not supported by the cases cited. In both *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 527 (5th Cir. 2020) and *Huawei Techs. Co., Ltd. v. Yiren Huang*, No 4:17-cv-893, 2019 WL 1978339, at *4 (E.D. Tex.

examples from around the country enforcing such language without resort to a Restatement analysis.[2] Plaintiffs wrongly contend *Mission Technologies* held a Restatement analysis "**must be applied**." Opp. at 6. In fact, the court said the opposite:

> The parties' mutually-agreed-to contract states that Texas law applies 'without regard to its conflicts of law provisions.' Therefore, it's likely that Mission Technologies has contractually waived its argument that one of Texas's exceptions to its choice-of-law principles applies. *So the Court's analysis to this point isn't, strictly speaking, necessary.*

*Mission Techs.*, 2024 WL 150504, at *3 n.40 (emphasis added). Because the Court must enforce the parties' "without regard" language, it need not, and should not, engage in a Restatement analysis.[3] The clear result is Texas law applies and Plaintiffs' Illinois claims must be dismissed.

## II. Nevertheless, A Restatement Analysis Would Also Lead to the Application of Texas Law.

Plaintiffs assert that Defendants' Restatement choice of law cases are inapposite because they are contract cases and Plaintiffs have tort claims. *See* Opp. at 12. But that is misleading. Under Texas law, the claim characterization is irrelevant. Courts in Texas routinely apply *broad choice of law provisions* to both contract and business tort claims.[4] The clause at issue here is an example

---

May 2, 2019), the courts did not address the impact of the "without regard" language at all, in dicta or otherwise.

[2] *See, e.g., OrbusNeich Med. Co. v. Boston Sci. Corp.*, 694 F. Supp. 2d 106, 114 (D. Mass. 2010) ("without regard" phrase "in and of itself, indicates to this court that the parties have selected Massachusetts law to govern all aspects of their dispute, without regard to their substantive or procedural nature. Any other conclusion contradicts the plain language of the choice of law provision."); *LeBlanc v. Delta Airlines*, No. 19-13598, 2021 WL 1517907, at *3-4 (E.D. La. Apr. 16, 2021) (same); *Proctor & Gamble Co. v. Bankers Trust Co.*, 925 F. Supp. 1270, 1288-89 (S.D. Ohio 1996) (the phrase "without reference to choice of law doctrine" foreclosed application of Ohio law and mandated dismissal of Ohio statutory claim); *Brill v. Regent Communs., Inc.*, 12 N.E.2d 299, 308 (Ind. Ct. App. 2014) ("without regard to" phrase "must be given meaning").

[3] Defendants included such an analysis for the same reason as the court in *Mission Techs.* – out of an abundance of caution. But it is not actually necessary.

[4] *Maynard v. PayPal, Inc.*, No. 3:18-CV-259, 2019 WL 3552432, at *5 (N.D. Tex. Aug. 5, 2019) (Fitzwater, J.) (clause covering "any claim or dispute that has arisen or may arise between you and PayPal" was broad); *VTX Communs., LLC v. AT&T Inc.*, No. 7:19-cv-269, 2020 WL 4465968, at

2

of a broad choice of law clause. It applies to interpretation of the contract but also encompasses "any Dispute arising out of or relating to this Agreement or our Services." *See* Dkt. 60, Ex. P, § 16. Plaintiffs again ask the Court to disregard the parties' agreement that Texas law applies to *any dispute*, whether based in tort, contract, or statute.

Plaintiffs also fail to overcome two significant Texas public policy considerations highlighted in Defendants' Motion (Dkt. 67 at 11). The first is the party-autonomy rule, which requires the parties' choice of law be given effect to fulfill their expressed expectations. *See, e.g., Goosehead Ins. Agency, LLC v. Williams Ins. & Consulting, Inc.*, 533 F. Supp. 3d 367, 382 (N.D. Tex. 2020). Plaintiffs misstate *Goosehead* by claiming the court held a full Restatement analysis must be performed. Opp. at 7. In denying reconsideration of its dismissal of plaintiff's claims under Michigan law, the court noted a Restatement analysis was not needed because of a Texas statutory provision: "Although it is unnecessary to undertake this analysis, the Court will do so . . . ." *Goosehead*, 533 F. Supp. 3d at 381. Further, analyzing the first Restatement factor, the court held, "[I]n signing a choice-of-law agreement, the intent of the parties at the time of the transaction favors holding that Texas has the most significant relationship because the parties intended to bind themselves to such a finding. To be clear, the analysis could end here . . . ." *Id.* at 383 (citation omitted). *Goosehead* and the party autonomy rule warrant the application of Texas law.[5]

The second, and equally important public policy given Texas's established status as a corporate headquarters mecca, is uniformity and predictability. *See Exxon Mobil Corp. v. Drennen*,

---

*3 (S.D. Tex. Aug. 4, 2020) ("clauses that govern all disputes 'in connection with' the contract also encompass tort claims"). *See also Caton v. Leach Corp.*, 896 F.2d 939, 943 n.3 (5th Cir. 1990) (clause choosing a state's law to "govern, construe and enforce all of the rights and duties of the parties arising from or relating in any way to the subject matter of this contract" is broad).

[5] *See also Haynsworth v. Lloyd's of London*, 933 F. Supp. 1315, 1323 (S.D. Tex. 1996) ("Party autonomy allows parties to a contract to specify which laws will govern the contract").

452 S.W.3d 319, 329-30 (Tex. 2014). In *Drennen*, the Texas Supreme Court established Texas's strong public policy in promoting uniformity of contracts and distinguished prior choice of law cases involving *restrictive employment covenants*, rendering the cases cited by Plaintiffs – *Realogy*, *Cardoni*, *DeSantis*, *Huawei*, *Sortiumusa*, and *Le-Vel Brands* – inapposite. *Id.* at 329-330 & n.7.[6] In a shift from *DeSantis* 24 years earlier, the Court found significant value in "the ability of a company to maintain uniformity" in its contracts with all users regardless of where they reside. *Id.* at 329-30. The court noted that in 2014, Texas was home to "many of the world's largest corporations" (which has only increased), driving a shift in public policy toward uniformity and predictability. *Id.* at 329-30 & n.6.[7] The court also noted, "In multistate transactions, the[] prime objectives [of protecting expectations] may best be attained . . . by letting the parties choose the law to govern the validity of the contract." *Id.* at 330. Lastly, even if applying the parties' chosen law would lead to a different result in the lawsuit (as it would here), the court held such an outcome would not contravene any fundamental public policy. *Id.* at 330-31.

### III. Texas Has a Materially Greater Interest.

To succeed on a Restatement analysis, Plaintiffs must show Illinois has a materially greater interest than Texas. *See 3D/Int'l, Inc. v. Romano*, 811 F. App'x. 244, 251 (5th Cir. 2020); *Mission Techs.*, 2024 WL 150504, at *3. But their admission that "substantial acts in furtherance of the

---

[6] Non-compete agreements are an example of fundamental public policy. *Drennen*, 452 S.W.3d at 330 n.7. In *Realogy*, the court cited *DeSantis* to note that enforcing non-compete agreements is Texas fundamental policy and did not apply Delaware law. In *Cardoni v. Prosperity Bank*, 805 F.3d 573, 585-89 (5th Cir. 2015), the Texas choice of law provision was not applied to the non-compete clause (due to Oklahoma fundamental policy) but **was applied** to the non-solicitation and non-disclosure clauses. As this action is not a non-compete case, these decisions do not help Plaintiffs' argument. *Drennen* and *Cardoni* both support applying the agreed-to Texas law here.

[7] Texas was third in Fortune 500 headquarters. Since 2014, Texas continues to attract corporations and now leads the nation with the most Fortune 500 headquarters, making contract uniformity a fundamentally significant public policy of Texas. https://www.statesman.com/story/news/local/2023/06/05/texas-fortune-500-companies-list-2023-tesla-dell-oracle-austin/70290189007/

4

alleged violations or their effects . . . occurred in" Dallas (Am. Compl. ¶ 23) reveals the opposite. Realizing the fatal impact of their admission, Plaintiffs make the novel argument that they should not be bound by their own pleadings. There is no law to support this argument. Indeed, even Plaintiffs note that this Court "must accept well-pleaded facts as true." Opp. at 5. Paragraph 23 contains well-pleaded facts and Plaintiffs did not seek leave to replead.[8] Given Plaintiffs' admission, and the other factors favoring Texas's strong public policy interests, including Texas' interest in applying its own statute (CUBI), Plaintiffs have failed to satisfy their burden.[9]

### IV. Applying Texas Law is Not Contrary to a Fundamental Illinois Policy.

Plaintiffs' argument that BIPA represents fundamental Illinois policy is not based on a single Texas-law decision. While Plaintiffs criticize Defendants for citing cases from other states (Opp. at 6-7), that is all they do themselves, while Defendants rely on Texas law. Plaintiffs also grossly misstate CUBI's application by falsely claiming (without any case law) it "only protects Texas residents." Opp. at 14. CUBI is a robust statute that provides for higher damages per violation than BIPA, protects "individuals" regardless of their residence, and regulates Texas companies' capture or use of "a biometric identifier of an individual" without first obtaining informed consent. *See* Tex. Bus. & Com. Code Ann. § 503.001(b). The only people not protected under CUBI are Plaintiffs' lawyers. Moreover, the actions alleged here, if true, would not have

---

[8] Plaintiffs assert they had to plead local venue facts and shouldn't be bound by the admissions. Opp. at 9-10. This is legally and ethically questionable. First, Plaintiffs had no need to establish venue by pleading these facts; the TOUs selected this venue, as the Illinois federal judge already found. Second, the upshot of their argument is that Plaintiffs are allowed to intentionally misstate the facts when it comes to pleading venue and therefore Plaintiffs should not be bound by such acceptable falsehoods. This approach to pleading clearly violates Rule 11. Plaintiffs are bound by their own operative pleadings at all times and particularly in the context of a Motion to Dismiss.

[9] "[C]ourts applying Texas law have found that Texas's public policy interest in enforcing mutually-agreed-to choice-of-law provisions as written outweigh a foreign state's interest in enforcing its laws, even when application of Texas's laws would deprive a litigant of a cause of action." *Mission Techs.*, 2024 WL 150504, at *3 & n.47 (citing cases). This is the case here.

5

targeted only Illinois residents but all users nationwide—including Texans. Thus, if Plaintiffs' claims had any merit, the Texas Attorney General could pursue Defendants under CUBI.[10]

Plaintiffs rely on an outdated case under California's choice of law rules, and they fail to mention California did not have its own biometric privacy statute when it was decided. *See In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1169-70 (N.D. Cal. 2016).[11] In that case, the court cited Illinois' standard for determining if a provision violated fundamental policy: it must be "contrary to pure morals and abstract justice." *Id.* at 1167 n.1. Defendants also cited this standard. Motion at 14-15. Plaintiffs, however, failed to address this issue and did not argue how the Texas choice of law provision here violates that standard, nor could they given CUBI.

Plaintiffs cannot overcome settled Texas law on this issue just because they prefer BIPA. "The forum will not refrain from applying the chosen law merely because this would lead to a different result." *Drennen*, 452 S.W.3d at 331 (quoting Restatement § 187 cmt. g); s*ee also DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 680 (Tex. 1990) ("[T]he result in one case cannot determine whether the issue is a matter of fundamental state policy for purposes of resolving a conflict of laws."); *VTX Communs.*, 2020 WL 4465968, at *7 ("The test is whether the chosen law contravenes a state *policy*, not the *outcome* in a particular case." (citations omitted)).

---

[10] Moreover, Plaintiffs cite to nothing critical of CUBI, while the Illinois legislature amended BIPA (SB 2989), heeding the Illinois Supreme Court's directive to fix the statute's crushing "per scan" damages. *See Cothron v. White Castle System, Inc.*, 216 N.E.3d 918, 929 (Ill. 2023).

[11] California has since enacted a privacy statute enabling residents to limit the use or disclosure of their biometrics. But unlike CUBI, which regulates Defendants' conduct in connection with Plaintiffs' biometric information, the California statute only protects California residents and thus did not apply to the Illinois plaintiffs in that case. *Delgado v. Meta Platforms, Inc.*, No. 23-cv-04181, 2024 WL 818344, at *4 (N.D. Cal. Feb. 27, 2024). The statute does not provide the same privacy rights as BIPA. *Id.*, at *3-5. CUBI, however, provides those rights and more. Also, California choice of law rules are outcome-determinative while, Texas' are clearly principle-based. The California decisions (not based on Texas' choice of law rules) are inapplicable.

In sum, this Court need not conduct a Restatement analysis given the breadth of Plaintiffs' enforceable contractual waiver. Nevertheless, application of Texas' choice of law rules leads to the same result: Texas law applies. BIPA does not require overriding Texas's longstanding public policy interests in (1) enforcing contracts as written, especially when Texas residents are involved; (2) ensuring uniformity in application of multi-state contracts; and (3) enforcing biometric privacy through the state's highest law enforcement official. Because Texas law governs this action, the Court should dismiss Plaintiffs' Illinois BIPA claims with prejudice.

## V. **Plaintiffs Do Not Plausibly Allege Defendants Unlawfully Collected or Possessed Their Biometric Information.**

The Court should dismiss the Amended Complaint for the independent reason that Plaintiffs fail to state a plausible claim against any Defendant. Plaintiffs' Opposition concedes they must plead facts raising a plausible inference that Defendants took an active step to collect their biometric information. Opp. at 18-19. Despite this standard, Plaintiffs allege only that the following services involve biometrics collection: (1) alleged use of "facial processing technology" to identify potential matches; (2) user-specific avatars during video calls; and (3) verifying a user or confirming an individual is a dating site user. Opp. at 19. But none of these allegations raise a plausible inference that Defendants collected Plaintiffs' biometrics without prior written consent. First, Plaintiffs' allegations describing Defendants' various patents do not raise a plausible inference that Defendants used facial recognition technology on Plaintiffs' photographs. Second, Plaintiffs' allegations that two Defendants use third-party software to perform *object* recognition does not plausibly mean Defendants also use that software to collect biometrics. Third, Plaintiffs do not allege they ever submitted a live selfie to any Defendant, which they admit is a required step for user verification. Opp. at 20. Given these concessions, the Amended Complaint does not state a cognizable BIPA claim.

### A. Plaintiffs do not Plausibly Allege Defendants Secretly Collected Biometrics Merely Because They Hold Various Patents.

Defendants' Motion demonstrates Plaintiffs have not plausibly alleged any Defendant practiced one of its patents or continuations to secretly collect biometric information. Plaintiffs argue the Court should disregard this fact and ignore cases holding that the mere existence of a patent is insufficient to plausibly allege it is being practiced.[12] Citing only out-of-state cases, Plaintiffs erroneously assert that "[c]ourts routinely find allegations referring to defendants' patents" make collection of biometric information plausible. Opp. at 21. In the two cases cited, however, there was no real dispute the defendant exercised its patent; the question was whether the patented technologies collected "biometric identifiers" capable of identifying an individual. *See Delgado*, 2024 WL 818344, at *7; *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 517 (N.D. Ill. 2022). Significantly, in *Carpenter*, the defendant acknowledged it practiced the patent by using voice recordings to train an AI model to recognize speech but argued this involved only the collection of voice characteristics like "accent, speech pattern, gender, or age" – not biometric identifiers under BIPA. *Id.* at 517. *Delgado* is likewise distinguishable. In addition to holding a voice recognition technology patent, Meta published a policy stating it may collect "voice recordings which may be used to identify you . . . ." 2024 WL 818344, at *7. This admission made it plausible Meta practiced the patent to collect biometric identifiers.

Here, Plaintiffs do not allege a single fact raising a plausible inference that any Defendant uses face or voice recognition allegedly described in the patents. Allegations that patented voice

---

[12] *See*, *e.g.*, Dkt. 67 at 20 (citing *Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 334 (5th Cir. 2014) (patent application did not mean design had or could be implemented); *Nu-You Techs.*, 2016 WL 4717991, at *2 (information and belief allegations failed to plausibly allege defendant performed every step of the method claimed in its patent). Nothing in *Carpenter* or *Delgado* exempts BIPA claims from the requirement to plausibly allege a patent was actually practiced.

recognition technology collects biometric identifiers under BIPA bears no resemblance to Plaintiffs' allegation that Defendants secretly use biometric information when recommending potential matches. Unlike *Delgado* and *Carpenter*, the '811 Patent discussed in the Amended Complaint describes, *in the specification*, numerous potential matching signals, most of which are not related to biometrics—i.e., matches based on common friends, common interests, location, sexuality, or age. '811 Pat. c.19. The mere mention of an unclaimed alternative embodiment that *could* employ biometrics invokes only the speculation or possibility of wrongful conduct that does not plausibly state a claim. *See Armstrong v. Ashley*, 60 F.4th 262, 270 (5th Cir. 2023) ("[W]ell-pled facts that are 'merely consistent with' an entitlement to relief, that is, equally suggestive of legal and illegal conduct, do not suffice.").

Finally, Plaintiffs assert Defendants' acquisition of Hyperconnect and its video call patents demonstrates Defendants collected Plaintiffs' biometric information. But no Plaintiff alleges he or she ever participated in any video calls or used an avatar on any of Defendant's dating sites. Further, the allegations show only that Hyperconnect developed technology using biometrics collected from South Korean residents. *See* Am. Compl. ¶¶ 204-208. This says nothing about the Defendants' collection of biometrics from any Illinois user, let alone from any Plaintiff. Merely acquiring a company with a patent capable of using biometric technology fails to raise a plausible inference that any Defendant used that technology to collect Plaintiffs' biometric information.

### B.  Object Recognition Does Not Raise a Plausible Inference of Biometric Collection.

Plaintiffs' allegations that Defendants use pHash technology or Amazon Rekognition to collect biometrics are similarly implausible. Opp. at 19. The Opposition cites to a summary of an article explaining OkCupid may use pHash technology to identify banned *content* (not people).[13]

---

[13] For instance, OkCupid's photo rules prohibit photographs containing contact information. See https://okcupid-app.zendesk.com/hc/en-us/articles/22771802205339-Photo-rules.

9

This says nothing about using pHash technology to perform facial recognition. Similarly, Plaintiffs' Opposition summarizes allegations about Amazon Rekognition, making clear that only *object* recognition is performed. Opp. at 19, citing Am. Compl. ¶¶ 191-198 (displaying screenshot at paragraph 196 describing a user with a volleyball as an "athlete" and a user with a guitar as a "musician"). These technologies are routinely used by online platforms across the internet. Without more, Plaintiffs' allegation that Defendants use them to violate BIPA is implausible.[14]

### C. Plaintiffs Concede User Verification Complies with BIPA.

Plaintiffs' own allegations defeat their claim that Defendants use facial recognition to verify or confirm users. First, Plaintiffs admit that at least Tinder obtains user consent before performing user verification. Am. Compl. ¶ 140. Second, Plaintiffs admit that to perform user verification, the user must submit a live selfie to the Defendant's dating site. *Id.* ¶ 139. Third, Plaintiffs admit user verification is *not* required for account creation. *Id.* ¶ 140. Fourth, no Plaintiff alleges he or she submitted a live selfie to any Defendant. Even construing these facts in a light most favorable to Plaintiffs, they fail to allege any Defendant covertly used facial recognition to verify or confirm them as users since no Plaintiff alleges he or she submitted a live selfie to any Defendant, which Plaintiffs admit is a required step to perform facial recognition for user verification. Plaintiffs' patently implausible claims based on user verification must be dismissed.

## VI. Conclusion

For the foregoing reasons and for those in Defendants' opening brief (Dkt. 67), the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

---

[14] "Where a plaintiff's facts do not make an inference of impermissible conduct of the defendant more likely than an inference of permissible conduct, the plaintiff's right to relief is not a plausible conclusion." *Terraspan, LLC v. Rave, LLC*, No. 3:12-CV-816, 2012 WL 6115721, at *6 (N.D. Tex. Dec. 10, 2012) (Kinkeade, J.) (citing *Iqbal* and *Twombly*).

Dated: June 4, 2024                                     Respectfully submitted,

                                                        **DLA PIPER LLP (US)**

                                                        /s/ *Robert M. Hoffman*
                                                        Rob Hoffman
                                                        Texas Bar No. 09788200
                                                        rob.hoffman@us.dlapiper.com
                                                        John Canoni
                                                        Texas Bar No. 24117335
                                                        john.canoni@us.dlapiper.com
                                                        1900 N. Pearl Street, Suite 2200
                                                        Dallas, Texas 75201
                                                        Telephone: (214) 743-4500
                                                        Facsimile: (214) 743-4545

**BLANK ROME LLP**                                      **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Daniel R. Saeedi
(*admitted pro hac vice*)                               Stephen A. Broome
daniel.saeedi@blankrome.com                             (*admitted pro hac vice*)
Rachel L. Schaller                                      stephenbroome@quinnemanuel.com
(*admitted pro hac vice*)                               51 Madison Avenue, 22nd Floor
rachel.schaller@blankrome.com                           New York, New York 10010
444 West Lake Street, Suite 1650                        Telephone: (212) 849-7000
Chicago, Illinois 60606                                 Facsimile: (212) 849-7100
Telephone: (312) 776-2517
Facsimile: (312) 276-2601

                                                        **Counsel for Defendants**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 4th day of June, 2024, a true and correct copy of the foregoing document was served via the CM/ECF system, which sent notification of such filing to all counsel of record.

                                                        /s/ *Robert M. Hoffman*
                                                        Robert M. Hoffman

11