IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARCUS BAKER, *et al.*, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:23-CV-02761-N |
| MATCH GROUP, INC., *et al.*, | § § § | |
| Defendants. | § | |

## **MEMORANDUM ORDER AND OPINION**

This Order addresses Defendants Match Group, Inc., et al.'s ("Match") Motion to Dismiss Plaintiffs' Amended Class Action Complaint [66]. Because the Court finds that Texas law applies, Plaintiffs' claims fail as a matter of law. Therefore, the Court grants the motion to dismiss on choice of law grounds and does not reach the issue of failure to state a claim.

## **I. ORIGINS OF THE MOTION**

Plaintiffs are five residents of Illinois who are users of multiple dating websites owned by Match. Pls.' Am. Compl. ¶¶ 12–16 [60]. They allege that Match is collecting biometric data without users' consent. *Id.* ¶¶ 145–46. Plaintiffs filed suit in Illinois state court, alleging violations of the Illinois Biometric Information Privacy Act ("BIPA"). Defs.' Br. Mot. Dismiss 3 [67]. Defendants removed to federal court. *Id.* The Illinois court transferred the case to this Court, because the Terms of Use ("TOUs") in the contract between the parties selected Texas law. *Id.* Match now moves to dismiss this action under

MEMORANDUM ORDER & OPINION – PAGE 1

two theories: (1) that Texas law applies, and because Plaintiffs allege only violations of Illinois law, there is no plausible legal basis for relief, and (2) if Illinois law did apply, the Plaintiffs have failed to allege sufficient facts to state a claim.

## II.  RULE 12(B)(6) LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claims for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "On motion under Rule 12(b)(6), the Court must decide whether the facts as alleged, if true, would entitle the plaintiff to some legal remedy." *S&W Enters., L.L.C. v. Southtrust Bank of Ala., N.A.*, 2001 WL 238095, at *4 (N.D. Tex. 2001). "Dismissal is proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Vines v. City of Dallas*, 851 F.Supp. 253, 259 (N.D. Tex. 1994) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

## III.  THE COURT GRANTS THE MOTION TO DISMISS BECAUSE TEXAS LAW APPLIES

Plaintiffs pled only claims arising under Illinois law.  Match's motion to dismiss raises two reasons to dismiss the claims.  First, Match argues that Texas law applies here, and thus the Illinois claims should be dismissed.  Defs.' Br. Mot. Dismiss 1–2.  Second, Match argues that Plaintiffs failed to plead sufficient facts to state a claim for relief.  *Id.* The Court determines that Texas law applies.  Because this is an independently sufficient

MEMORANDUM ORDER & OPINION – PAGE 2

ground for dismissal, the Court declines to address the sufficiency of the facts to state a claim.

A federal court sitting in diversity jurisdiction applies the choice of law rules from the forum state. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003). As here, where jurisdiction was transferred from another federal court because of a valid forum selection clause, "transfer of venue will not carry with it the original venue's choice of law rules." *Atl. Marine Const. Co. v. U.S. Dist. Court for West. Dist. of Tex.*, 571 U.S. 49, 64 (2013). Therefore, Texas choice of law rules apply. The TOUs contain a choice of law clause that provides that Texas law will govern any litigation. Defs.' Br. Mot. Dismiss 6; Pls.' Am. Compl. ¶ 60. "Texas law gives effect to choice of law clauses regarding construction of a contract." *Benchmark*, 343 F.3d at 726 (citing *In re J.D. Edwards World Sols. Co.*, 87 S.W.3d 546, 549 (Tex. 2002)).

Texas has adopted the Restatement (Second) Conflict of Laws Section 187 framework for determining whether choice of law agreements are enforceable. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex. 1990), *superseded by statute on other grounds*; *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324–25 (Tex. 2014). The Restatement framework states:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular

issue and which, under the rule of § 188, would be the state of applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF L. § 187(2) (Am. L. Inst. 1971) [hereinafter RESTATEMENT].

Texas has a substantial relationship to the parties and the transaction. All of the entities under Match that operate the dating sites are headquartered in Texas, and Plaintiffs have alleged that "substantial acts in furtherance of the alleged violations or their effects" and "[m]any of the acts alleged in [the] Complaint occurred in, or emanated from, this District." Pls.' Am. Compl. ¶ 23. Therefore, section 187(2)(a) does not preclude application of Texas law.

Next, the Court turns to the three-step approach to § 187(2)(b) created in *DeSantis*. 793 S.W.2d at 678. "Texas courts consider the factors under subsection (b) 'in reverse order.'" *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 533 (5th Cir. 2020) (quoting *Cardoni v. Prosperity Bank*, 805 F.3d. 573, 582 (5th Cir. 2015)). The parties' choice of law selection will not prevail if a different state "(1) has a more significant relationship with the parties and the transaction . . . ; (2) has a materially greater interest . . . in the enforceability of a given provision; and (3) has a fundamental policy that will be contravened by the application of the chosen state's law." *Cardoni*, 805 F.3d at 581–82 (citing *Exxon Mobil*, 452 S.W.3d at 325–27).

    *1. Most Significant Relationship.* — First, the Court must determine whether Illinois "has a more significant relationship with the parties and their transaction" than Texas. *Desantis*, 793 S.W.2d at 678. "The 'most significant relationship' determination

MEMORANDUM ORDER & OPINION – PAGE 4

is made by examining various contacts, including the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, place of incorporation, and place of business of the parties." *Realogy Holdings*, 957 F.3d at 533. Here, both Texas and Illinois have a significant relationship to the parties and transaction.

The place of contracting favors Illinois, because the "last act necessary . . . to give the contract binding effect," the Plaintiff's act in signing up for the dating websites, occurred in Illinois. RESTATEMENT § 188 cmt. e; *see ECL Grp., LLC v. Mass*, 2018 WL 949235 at *6 (N.D. Tex. 2018) (finding place of contract where plaintiff signed and returned agreement via email). However, "standing alone, the place of contracting is a relatively insignificant contact." RESTATEMENT § 188 cmt. e. Likewise, the place of negotiation "is of less importance when there is no one single place of negotiation or agreement, as, for example, when the parties do not meet but rather conduct their negotiation from separate states." *Id.*

The place of performance favors Texas. While the dating sites were available in Illinois for Plaintiffs to use, there is no evidence to suggest that Match performed any of its duties outside of its headquarters in Texas. *See Le-Vel Brands, LLC v. Bland*, 2019 WL 4735805, at *6 (N.D. Tex. 2019) (finding that a party's "performance under the contract took place in" his state of residence because "he was able to perform his duties . . . remotely . . . [and] he primarily performed them from" there). Likewise, signing up for a nation-wide dating service does not necessarily limit usage to the state where the user signed up. "[T]he place of performance can bear little weight in the choice of the applicable

MEMORANDUM ORDER & OPINION – PAGE 5

law when . . . at the time of contracting it is either uncertain or unknown." RESTATEMENT § 188 cmt. e.

The location of the subject matter of the contract does not favor either state, because there are too few facts at this stage to adequately determine where the alleged conduct took place. Plaintiffs argue that the place where the conduct causing the injury occurred must be Illinois because they uploaded their photographs in Illinois. Pls.' Resp. 8 [75]. However, the conduct at issue is not the Plaintiffs' uploading, nor the Defendants' collection of photographs, but the alleged processing of the photographs to collect Plaintiffs' biometric data. Pls.' Am. Compl. ¶¶ 25–29. Plaintiffs' claim that the "collection" of biometric data occurs when the photograph is uploaded is belied by their own pleadings and Illinois courts' interpretations of BIPA. The Complaint explains that the photographs must be processed with "facial processing technology." *Id.* ¶¶ 145–46. The mere collection of photographs alone does not create biometric data; it must be processed. And under BIPA, "photographs are explicitly excluded from the definition of biometric identifiers." *G.T. v. Samsung Elecs. Am. Inc.*, 2024 WL 3520026 at *2, *3 n.5 (N.D. Ill. 2024). Therefore, where Match allegedly "ultimately processes, stores, and uses Plaintiffs' and Class members' biometric identifiers," Pls.' Am. Compl. ¶¶ 145–46, is the relevant information to where the conduct causing the injury occurred.

Plaintiffs' Complaint alleges that "many of the acts alleged . . . occurred in, or emanated from" Texas. *Id.* ¶ 23. However, in their Response to the Motion to Dismiss, Plaintiffs claim that this is "factually unsupported" and "requires a fact-intensive inquiry that is not appropriate for this stage of the litigation." Pls.' Resp. 9 & n.5. Plaintiffs offer

MEMORANDUM ORDER & OPINION – PAGE 6

neither an explanation of what the alleged "substantial acts" it described in the Complaint that took place in Texas were, nor suggest where the processing may otherwise have taken place, but instead censure Defendants for the vagueness and lack of specificity. Pls.' Resp. 9–10. The Court determines that this element is unascertained at this stage and does not weigh where the conduct took place.

Similarly, the residences of the parties balance evenly and do not weigh for either side. Plaintiffs are Illinois residents, and they each created a dating profile while residing in Illinois. Pls.' Am. Compl. ¶¶ 25–27. Match is headquartered in Texas. *Id.* ¶ 23. Match made the dating websites available in Illinois. Pls.' Resp. 8. And Plaintiffs uploaded their photos while in Illinois. *Id.*

Finally, courts have found that a Texas choice of law provision in the contract "favors the holding that Texas has the most significant relationship because the parties themselves intended to bind themselves to such a finding." *Goosehead Ins. Agency L.LC. v. Williams Ins. & Consulting, Inc.*, 533 F.Supp.3d 367, 383 (N.D. Tex. 2020).

It is clear that both Texas and Illinois have a significant relationship with the parties and the transaction, but it is not clear that Illinois has a more significant relationship. It is likely that Illinois fails this prong because Plaintiffs are unable to show a *more* significant relationship than Texas, because they are more evenly matched. However, the Court need not make a more robust determination here, given each of the prongs of the three-step approach must be satisfied to show that a choice of law provision is unenforceable, and one of the other elements is not satisfied.

**2. Materially Greater Interest.** — Second, the court must determine if Illinois has a "materially greater interest" than Texas. *Desantis*, 793 S.W.2d at 678. "Courts generally find that, while all states maintain 'a general interest in protecting the justifiable expectations of entities doing business in several states,' the presence of a citizen employee or similarly situated individuals within their borders outweigh generalized macro-economics concerns." *Primoris T&D Services, LLC v. MasTec, Inc.*, 2023 WL 3400525 (N.D. Tex. 2023).

Here, Illinois has a "substantial interest in protecting its residents' biometric data." Pls.' Resp. 16. Texas, as a "corporate headquarters mecca," has a significant interest in "uniformity and predictability." Defs.' Reply 3 [80]. Because the welfare of state residents is generally considered a greater interest than the corporate expectations of a national corporation, Illinois has a materially greater interest than Texas.

**3. Contrary to Fundamental Policy.** — Finally, Plaintiffs must establish that application of Texas law would be contrary to "a state policy so fundamental that the courts of the state will refuse to enforce an agreement contrary to that law, despite the parties' original intentions, and even though the agreement would be enforceable in another state connected with the transaction." *DeSantis*, 793 S.W.2d at 680. The "fact that the law of another state is materially different from the law of this state does not itself establish that the application of the other state's law would offend the fundamental policy of [Illinois]." *Id.* Any "[c]hoices of law and forum in contracts have the incidental effect of preventing one party from getting to use the laws of all the excluded jurisdictions." *Haynsworth v. Lloyd's of London*, 933 F. Supp. 1315, 1323 (S.D. Tex. 1996). "The test is whether the

MEMORANDUM ORDER & OPINION – PAGE 8

chosen law contravenes a state *policy*, not the *outcome* in a particular case." *Cardoni*, 805 F.3d at 585 (emphasis in original) (quoting *Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc.*, 94 S.W.3d 163, 178 (Tex.App. – Houston [14th Dist.] 2002, no pet.)).

To succeed here, Plaintiffs must show that (1) BIPA is a "fundamental" policy, and (2) that application of Texas law would contravene that policy — not merely offering a different law or outcome, but that the law would not protect the rights fundamental to Illinois in enacting BIPA.

Other courts have found that BIPA "embodies a fundamental policy of the state of Illinois," *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1169 (N.D. Cal. 2016), as "evidenced by its enactment of BIPA to regulate companies." Pls.' Resp. 11. This Court does not disagree. However, it is a fundamental policy that is shared by Texas law in its similar biometric statute, the Capture or Use of Biometric Identifier ("CUBI"). TEX. BUS. & COM. CODE § 503.001.

Plaintiffs argue that CUBI does not adequately protect Illinois residents' interests. However, Plaintiffs' claim that CUBI covers only Texans is without support. *See* Pls.' Resp. 14. Plaintiffs cite a case where the Attorney General, in his petition, refers to the plaintiffs as "Texans" as support that the statute can only protect Texas residents. *Id.* (citing Original Petition at 3, *Texas v. Meta Platforms, Inc.*, No. 22-0121 (Harrison Co., Tex. filed February 14, 2022)). The fact that one case was focused on conduct against Texans does not prove that CUBI can protect only Texans. Nor does the language of the statute limit protection to residents. *See* TEX. BUS. & COM. CODE § 503.001 ("A person may not capture a biometric identifier of an individual for a commercial purpose.").

MEMORANDUM ORDER & OPINION – PAGE 9

Similarly, the fact that CUBI is enforced by the Attorney General and does not create a private right of action does not limit the protection it offers potential Illinois plaintiffs.  Where, as alleged here, a company is collecting biometric data without consent from nationwide consumers — including both Texans and Illinoisans — the Texas Attorney General would have a vested interest in pursuing claims against that company for all impacted.

Texas, in enacting the CUBI statute, has demonstrated its significant fundamental policy interest in this arena.  Texas has chosen a different remedy than Illinois has chosen, but that does not mean that Texas does not have a public interest in this matter.  And while the Texas law is different than Illinois's statute, it offers a similar protection and therefore does not contravene the fundamental policy of Illinois to protect citizens from unlawful use of their biometric information.

While Illinois may have a materially greater interest than Texas, Plaintiffs have failed to demonstrate that Illinois has a more significant relationship to the parties and the transaction than Texas or that the application of Texas law would be contrary to Illinois fundamental policy.  Therefore, because two out of the three elements that must be established to overcome the choice of law provision have not been met, Texas law is the appropriate law to govern this case, not Illinois law.

## Conclusion

The Court holds that Texas law applies to the claims here, and the Court grants the Defendants' motion to dismiss. Because all the asserted claims arise under Illinois law, they must be dismissed with prejudice as a matter of law.

Signed October 30, 2024.

_____
David C. Godbey
Chief United States District Judge